UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————————————

LYNETTE TIGGELMAN,                )
                                  )
                Plaintiff,        )
                                  )       Case No. 1:18-cv-1402
v.                                )
                                  )       Honorable Robert J. Jonker
COMMISSIONER OF                   )
SOCIAL SECURITY,                  )
                                  )
                Defendant.        )
——————————————————————)

## REPORT AND RECOMMENDATION

This is a social security action brought under 42 U.S.C. § 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security, finding that plaintiff was not entitled to supplemental security income (SSI) benefits. Plaintiff filed her application for SSI benefits on October 23, 2012.[1] On May 25, 2017, plaintiff received a hearing before the ALJ. (ECF No. 9-4, PageID.159-234). The ALJ issued his decision on August 18, 2017, finding that plaintiff was not disabled. (Op., ECF No. 9-3, PageID.127-51). On October 19, 2018, the Appeals Council denied review (ECF No. 9-3, PageID.113-16), rendering the ALJ's decision the Commissioner's final decision.

---

[1] This case has a lengthy procedural history. On September 27, 2016, United States Magistrate Judge Ray Kent reversed an ALJ's February 7, 2014, decision denying plaintiff's claim for SSI benefits and remanded the matter for further administrative proceedings because the ALJ did not satisfy the procedural requirement of providing good reasons for the weight that he gave to a treating physician's opinions. (ECF No. 9-6, PageID.299-310).

Plaintiff timely filed a complaint seeking judicial review of the Commissioner's decision.  Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1.    The ALJ's residual functional capacity findings are inconsistent with his step-3 findings that plaintiff had moderate limitations in concentration, persistence, or pace.

2.    The ALJ violated the treating physician rule in the weight that he gave to the opinions of Amy Hogue, M.D.

3.    The ALJ gave inadequate reasons to accept the opinions that Jeffrey Andert, Ph.D., expressed in his medical expert testimony at plaintiff's May 25, 2017, hearing.

4.    The ALJ gave inadequate reasons to reject the opinions of Dale Blum, M.D., a medical consultant, regarding plaintiff's RFC.

5.    The ALJ's RFC finding is not supported by substantial evidence.

6.    The ALJ "cherry picked" the record.

7.    The ALJ failed to address regional jobs.

(Plf. Brief, 2, ECF No. 15, PageID.1283).

For the reasons set forth herein, I recommend that the Court affirm the Commissioner's decision.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*

*v. Perales*, 402 U.S. 389, 401 (1971).  The scope of the court's review is limited. *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73; *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion.").

## The ALJ's Decision

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after October 23, 2012, the application date.  (Op., 3, ECF No. 9-3, PageID.129). Plaintiff had the following severe impairments:  "lumbar degenerative disc disease; status post left shoulder dislocation and impingement syndrome; left carpal tunnel syndrome; interstitial cystitis with frequent urinary tract infections; bipolar II disorder; generalized anxiety disorder; and borderline personality disorder."  (*Id.* at 4, PageID.130).  Plaintiff did not have an impairment or combination of impairments

that met or equaled a listing impairment.  (*Id.* at 5, PageID.131).  The ALJ found that

plaintiff retained the residual functional capacity (RFC) for a range of light work with

the following exceptions:

> [T]he claimant can do no greater than frequent forceful gripping or
> grasping with her left upper extremity, and she can do no overhead
> reaching or work with her left upper extremity.  The claimant can only
> frequently balance, stoop, crouch, crawl, and climb ramps or stairs, and
> she can never climb ladders, ropes, or scaffolds.  Additionally, the
> claimant is limited to doing simple, routine, and repetitive work that
> involves making simple, work-related decisions and tolerating no more
> than occasional workplace changes.  The claimant is also limited to
> working in a low-stress environment that involves no fast-pace or
> production rate quotas such as assembly line work.  However, the
> claimant can tolerate typical changes involved with simple work
> activity.  The claimant can have only brief, superficial contact with
> supervisors and coworkers, and she is limited to working in small,
> familiar groups of no greater than six to eight individuals.  The claimant
> can have no contact with the general public.  The claimant also may not
> perform jobs that involve caretaking for other people, including children,
> the elderly, or the disabled.

(*Id.* at 8, PageID.134).

The ALJ found that plaintiff's statements concerning the intensity, persistence

and limiting effects of her symptoms were not entirely consistent with the medical

evidence and the other evidence of record. (*Id.* at 17, PageID.143).  Plaintiff has no

past relevant work.  (*Id.* at 23, PageID.149).

The ALJ considered the testimony of a vocational expert (VE).  In response to

a hypothetical question regarding a person of plaintiff's age with her RFC, education,

and work experience, the vocational expert (VE) testified that there were

approximately 348,000 jobs that exist in the national economy that she would be

capable of performing.[2]  (ECF No. 9-4, PageID.226-28).  The ALJ found that this constituted a significant number of jobs, and that plaintiff was not disabled.  (Op., 24-25, PageID.150-51).

## Discussion

### 1.

Plaintiff argues that the ALJ's residual functional capacity findings are inconsistent with his step-3 findings regarding plaintiff's moderate limitations in concentration, persistence or pace.  (Plf. Brief, 2-4, PageID.1283-85; Reply Brief, 1-2, PageID.1324-25).

Plaintiff conflates the ALJ's factual findings at distinct stages of the sequential analysis.  The administrative finding whether a claimant meets or equals a listed impairment is made at step 3 of the sequential analysis.  *See* 20 C.F.R. § 416.920(a)(4)(iii).  Step-3 regulates a "narrow category of adjudicatory conduct." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006) (*en banc*).  It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion."[3]  *Id.*

---

[2] The VE actually identified a total of 368,000 jobs, 145,000 of which were line attendant positions. (ECF No. 9-4, PageID.227).  The ALJ's opinion cited 125,000 line attendant positions.  (Op., 24, PageID.150).  The lower total job figure of 348,000 gives plaintiff the benefit of the discrepancy.

[3] The Listing of Impairments "describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009) (internal quotations omitted).  "Because satisfying the listings yields an automatic determination of disability . . . the evidentiary standards [at step three] . . . are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Commissioner*, 552 F. App'x 533, 539 (6th Cir. 2014).

It is well established that a claimant has the burden of demonstrating that she satisfies all the individual requirements of a listing.  *See Elam*, 348 F.3d at 125.  By contrast, the administrative finding of a claimant's RFC is made at step 4 of the sequential analysis and it is applied at steps 4 and 5.  *See* 20 C.F.R. § 416.920(a)(4).

The ALJ determined at step 3 of the sequential analysis that plaintiff's impairments did not meet or equal the requirements of any listing impairment.  (Op., 5-8, PageID.131-34).  Plaintiffs mental impairments did not satisfy the demanding paragraph B severity requirements of listings 12.04, 12.06, and 12.08.  (*Id.* at 6-8, PageID.132-34).  Under paragraph B, plaintiff was required to prove one extreme limitation or two marked limitations[4]  in the following areas:

1. Understanding, remembering, or applying information;

2. Interacting with others;

3. Concentrating, persisting, or maintaining pace;

4. Adapting or managing oneself.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B), 12.08(B).  The ALJ found that plaintiff had only moderate limitations in each of the four areas.  (Op., 6-8,

---

[4] ALJs employ a five-point rating scale in evaluating the effects of a mental disorder: none, mild, moderate, marked, and extreme.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2).  A "mild limitation" means the individual is "slightly limited" in functioning "independently, appropriately, effectively, and on a sustained basis."  *Id.*  A "moderate limitation" exists if the individuals "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is fair."  *Id.*  A "marked limitation" means that individual's functioning "independently, appropriately effectively, and on a sustained basis is seriously limited."  *Id.*  An "extreme limitation" is where the individual is "not able to function in this area independently, appropriately, effectively, and on a sustained basis."  *Id.*

PageID.132-34).

Plaintiff is not challenging the ALJ's step-3 determination.  Rather, she is attempting to take a portion of the ALJ's finding with regard to the paragraph B criteria at step 3 out of context and substitute it for the ALJ's factual finding that she retained the RFC for simple, routine, and repetitive work with the other restrictions specified in the ALJ's RFC finding.  (*Id.* at 8, PageID.134).  The paragraph B criteria used at steps 2 and 3 of the sequential analysis "are not an RFC assessment."  *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p (reprinted at 1996 WL 374184, at *4 (SSA July 2, 1996)); *see Dewey v. Commissioner*, No. 1:16-cv-395, 2017 WL 343627, at *3 (W.D. Mich. Jan. 24, 2017) ("Plaintiff fails to recognize that the ALJ's assessment of disorders at steps two and three are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").  "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listings of Impairments."  SSR 96-8p, 1996 WL 374184, at *4; *see Palmer v. Commissioner*, No. 1:16-cv-660, 2017 WL 2129689, at *3-4 (W.D. Mich. May 17, 2017) (collecting cases).

Plaintiff's reliance on *Keeton v. Commissioner*, 583 F. App'x 515, 533-34 (6th Cir. 2014) is misplaced.  *Keeton* is limited to situations where it is "not clear" that the ALJ incorporated the moderate limitations found at step 3 into his RFC

-7-

determination and hypothetical question to the VE. *See Palmer*, 2017 WL 2129689, at *4; s*ee also Rauch v. Commissioner*, No. 1:18-cv-408, at *4 (W.D. Mich. June 20, 2019) (rejecting the argument that an ALJ's step-3 finding of a moderate limitation in concentration, persistence or pace was not adequately taken into account where the ALJ expressly stated that his RFC finding limiting the plaintiff to simple, routine, repetitive tasks reflected the degree of functional limitation that he found under paragraph B).

In the instant case, there is no lack of clarity.  The ALJ expressly stated that his RFC finding reflects the degree of functional limitation that he found under paragraph B.  (Op., 8, PageID.134).  The ALJ's step-3 findings do not undermine his finding that plaintiff retained the RFC for simple, routine, and repetitive work with the other restrictions specified in the ALJ's RFC finding.  I find no error

## 2.

Plaintiff argues that the ALJ violated the treating physician rule in the weight that he gave to the opinions of Amy Hogue, M.D.  (Plf. Brief, 4-10, PageID.1285-91; Reply Brief, 2-4, PageID.1325-27).

Generally, the medical opinions of treating physicians are given substantial, if not controlling weight.  *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).  "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other

substantial evidence in the case record.' " *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).

"[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773 (citation and quotation omitted).  An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight.  *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990*); see also Kepke v. Commissioner*, 636 F. App'x 625, 629 (6th Cir. 2016) ("[A] a doctor cannot simply report what his patient says and re-package it as an opinion."); *Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors.  *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p[5] (reprinted at

---

[5] On March 27, 2017, the Administration rescinded SSR 96-2p "for claims filed on or after" that date.  Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017) (reprinted at 2017 WL 1105348).  The Administration noted that Ruling 96-2p was inconsistent with new rules that "state that all medical sources, not just acceptable medical sources, can make evidence that we categorize and consider as medical opinions."  *Id.*; *see Hancock v. Commissioner*,

1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Perry v. Commissioner*, 734 F. App'x 335, 339 (6th Cir. 2018) ("This does not require an 'exhaustive, step-by-step analysis[.]' ") (quoting *Biestek v. Commissioner*, 880 F.3d 778, 785 (6th Cir. 2017)).

Moreover, the Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007*); see Gayheart*, 710 F.3d at 376. The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reasons for that weight." SSR 96-2p, 1996 WL 374188 at *5; *see Gayheart*, 710 F.3d at 376. This procedural requirement exists, in part, so that claimants "understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith v. Commissioner*, 482 F.3d at 876; *see also Gayheart v. Commissioner*, 710 F.3d at 376 ("This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (citation and quotation omitted).

On September 25, 2013, Dr. Hogue provided plaintiff's attorney with a sworn statement. (ECF No. 9-15, PageID.829-40). She indicated that plaintiff's diagnosis

---

No. 1:16-cv-1105, 2017 WL 2838237, at *7 n.2 (W.D. Mich. July 3, 2017) ("Those new rules, however, apply only to claims filed on or after March 27, 2017.").

was bipolar disorder, borderline personality disorder, anxiety disorder, fibromyalgia, and chronic interstitial cystitis.  (*Id.* at PageID.834).  She opined that plaintiff would likely miss more than two or three days of work per month if she were placed in a work environment.  She anticipated that it would be difficult for plaintiff to get along with supervisors.  (*Id.* at PageID.837).  She expressed an opinion that plaintiff "would not be able to handle full-time employment."  (*Id.* at PageID.838).

The ALJ found that Dr. Hogue's opinion that plaintiff was unable to work was entitled to no weight because disability is an issue reserved to the Commissioner. (Op., 21, PageID.147).  The ALJ gave little weight to Dr. Hogue's opinions because they were "inconsistent with the medical evidence and the record as a whole, including the [plaintiff's] history of treatment, the mental status examination findings, and the [plaintiff's] reported activities of daily living."  (*Id.*).  In addition, her opinions were "quite conclusory."  (*Id.*).  She "did not actually propose any specific functional limitations that would prevent plaintiff from engaging in all possible full-time work activity."  (*Id.*).  The ALJ found that Dr. Hogue's opinion that plaintiff would have difficulty getting along with supervisors and coworkers was "directly contradicted by the claimant's own statements that she '(has) tons of friends' and that she has no difficulty getting along with supervisors, as well as [her] numerous social activities of daily living[.]"  (*Id.*) (citing ECF No. 9-12, PageID.564, 624; ECF No. 9-15, PageID.813).  The ALJ noted that Dr. Andert disagreed with Dr. Hogue's suggestion that plaintiff would likely miss two or three days a week because it "was unsupported by the record, as there was no indication that the claimant ha[d] been

unable to participate in any scheduled events, such as healthcare appointments on a consistent basis." (*Id.*).

The ALJ provided good reasons for the weight that he gave Dr. Hogue's opinions. The ALJ was correct that Dr. Hogue's opinion that plaintiff was unable to work was entitled to no weight. The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner 20 C.F.R. § 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. § 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."); *see also Cosma v. Commissioner*, 652 F. App'x 310, 311 (6th Cir. 2016) ("The ALJ reasonably gave no weight to [a doctor's] opinion because her conclusion that [plaintiff was] totally disabled is a determination reserved to the Commissioner.").

I find no merit in plaintiff's argument that the reasons the ALJ gave for giving little weight to Dr. Hogue's opinions were "boilerplate" and too vague for the Court to evaluate the ALJ's reasons. (Plf. Brief, 7, PageID.1288). The ALJ's finding that Dr. Hogue's opinion was inconsistent with the record as a whole was appropriate. "Generally, the more consistent a medical opinion is with the record as a whole, the more weight that we will give to that opinion." 20 C.F.R. § 416.927(c)(4). The ALJ may reject the opinion of a treating physician when the opinion is unsupported by the

medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). The ALJ noted that "Judy Strait, Psy.D., completed a mental residual functional capacity assessment" and he found that her opinions were entitled to partial weight. (Op., 19, PageID.145). Dr. Strait opined that plaintiff retained the RFC to perform routine, two-step tasks on a sustained basis. "Dr. Strait also noted that the plaintiff would work best alone or in a small, familiar group, and cautioned that she should be limited to superficial contact that is not constant with coworkers or the public." (*Id.*). Further, the ALJ found that the restrictions that Dr. Hogue suggested were inconsistent with plaintiff's daily activities. (Op., 21, PageID.147). The ALJ found that plaintiff's daily activities were inconsistent with the level of functional restriction that she claimed:

> These activities include driving, grocery shopping, making coffee, preparing meals, washing dishes, light housecleaning, making her bed, doing laundry, caring for her personal hygiene, managing her own money, helping to care for her children, visiting with her family, spending time with her friends, dating, speaking with others on the phone, exchanging text messages with others, using an online social network, attending church, attending weekly prayer meetings, attending a relaxation class, volunteering, eating out at restaurants, going bowling, playing board games, playing cards, exercising up to seven days per week, going for walks, meditating, reading, and watching movies.

(Op., 18, PageID.144).

The conclusory nature of Dr. Hogue's opinions and the absence of any specific functional limitations that would prevent plaintiff from engaging in all possible full-time work activity were good reasons for giving less weight to Dr. Hogue's opinions. *See Freeman v. Commissioner*, No. 1:18-cv-245, 2019 WL 762085, at *7 (W.D. Mich.

Feb. 21, 2019); *Elmer ex rel. Elmer v. Berryhill*, No. 1:18-cv-308, 2019 WL 358526, at *15 (N.D. Ohio Jan. 29, 2019); *Acosta v. Commissioner*, No. 17-12414, 2018 WL 7254256, at *10 (E.D. Mich. Sept. 6, 2018).

Plaintiff's argument that it is "internally inconsistent, hence reversibly erroneous, for an ALJ to impeach a witness with testimony from another whom the ALJ likewise rejected" (Plf. Brief, 6, PageID.1287) is not persuasive. None of the cases that plaintiff cites involved the claimant's statements that were inconsistent with restrictions that her treating physician suggested. (*Id.*). Plaintiff's statements that she had "a ton of friends" (ECF No. 9-15, PageID.813), that she got along "ok" or "well" with authority figures like bosses (ECF No. 9-12, PageID.564, 624) were good reasons to give little weight to Dr. Hogue's opinions. *See Stark v. Commissioner*, No. 1:14-cv-1044, 2015 WL 3849506, at *7 (N.D. Ohio June 22, 2015).

Jeffrey Andert, Ph.D., a board-certified clinical psychologist, testified as a medical expert during plaintiff's May 25, 2017 hearing. (ECF No. 9-4, PageID.199-218). Dr. Andert found no evidence in the record of plaintiff's inability to maintain regular attendance. (*Id.* at PageID.212). He "didn't find any indication" of plaintiff "being unable to participate or attend any scheduled events" and she "apparently consistently attended healthcare appointments." (*Id.*). The ALJ found that this testimony was persuasive. (Op., 21, PageID.147). Further, Dr. Hogue's statement regarding "how often plaintiff would likely miss work was conjecture, not a medical opinion." *Ellis v. Commissioner*, No. 1:15-cv-726, 2016 WL 3735776, at *4 (W.D. Mich. July 13, 2016). I find no violation of the treating physician rule.

**3.**

Plaintiff argues that the Commissioner's decision should be overturned because the ALJ gave inadequate reasons to accept Dr. Andert's medical expert testimony.  (Plf. Brief, 10-13, PageID.1291-94).

Plaintiff's attorney had no objections to Dr. Andert's qualifications as a medical expert.  (*See* ECF No. 9-4, PageID.200).   Dr. Andert testified that he had an opportunity to review the record in this case, and he questioned plaintiff regarding aspects of her condition and treatment that she had received.  (*Id.* at PageID.201-02). Dr. Andert offered a diagnosis of a bipolar disorder, generalized anxiety disorder, and borderline personality disorder.  (*Id.* at PageID.203-04).   Plaintiff did not have an impairment or combination of impairments that met or equaled a listing impairment. (*Id.* at 204-06).   Dr. Andert opined that the combined impact of plaintiff's impairments "would limit her to simple one to three step tasks[.]" (*Id.* at PageID.206). He did not think that plaintiff was capable of performing work in a fast-paced work environment such as an assembly line, but was capable of a daily quota of some type. He indicated that plaintiff should only have limited contact with the general public. She could perform work with small groups of coworkers.   She could tolerate the changes and stresses associated with simple work.  (*Id.*).

The ALJ gave great weight to Dr. Andert's opinions because they were generally supported by the medical evidence and the record as a whole, including plaintiff's history of mental health treatment, the mental status examination findings, and plaintiff's reported activities of daily living.  Moreover, Dr. Andert was

"an impartial psychological expert who had an opportunity to review the updated record, listen to the [plaintiff's] hearing testimony, and question the [plaintiff] directly prior to providing his opinion." (Op., 9, PageID.145).

The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing the evidence. *See Ulman v. Commissioner*, 693 F.3d at 713. I find no basis for disturbing the Commissioner's decision.

**4.**

Plaintiff argues that the ALJ's decision should be overturned because he gave inadequate reasons to reject the opinions of Dale Blum, M.D., a state agency medical consultant. (Plf. Brief, 13-14, PageID.1294-95; Reply Brief, 4, PageID.1327).

On February 22, 2013, Dr. Blum reviewed plaintiff's then-available medical records and offered his opinion regarding plaintiff's physical RFC as of that date. (ECF No. 9-5, PageID.289-91). Dr. Blum opined that plaintiff could perform light work. (*Id.* at PageID.290). He stated that plaintiff should avoid overhead reaching with her non-dominant left upper extremity. (*Id.* at PageID.291). He indicated that plaintiff could occasionally push and/or pull with her left upper extremity. (*Id.* at PageID.290). He suggested RFC restrictions limiting plaintiff to occasionally climbing ladders, ropes or scaffolds and occasionally balancing, stooping, kneeling, crouching, and crawling. (*Id.*).

ALJs "are not bound by any findings made by State agency medical or psychological consultants." *Justice v. Commissioner*, 515 F. App'x 583, 588 (6th Cir. 2013) (citation and quotation omitted). RFC is an administrative finding reserved to

the Commissioner.  *See* 20 C.F.R. § 416.927(d)(2).  Although the ALJ is required to consider opinions from medical sources regarding plaintiff's RFC, such opinions are not entitled to any special significance.  *See* 20 C.F.R. § 416.927(d)(3).

The ALJ considered Dr. Blum's opinions regarding plaintiff's RFC and gave them partial weight because they were generally supported by the record as a whole, "as of February 2013[.]"  (Op., 19, PageID.145).  Plaintiff argues that the Commissioner's decision should be overturned because the ALJ did not provide an adequate explanation why his RFC finding did not incorporate limitations restricting plaintiff to occasional pushing with her non-dominant left upper extremity and occasional, rather than frequent, stooping and kneeling.  (Plf. Brief, 13, PageID.1294; Reply Brief, 4, PageID.1327).  The ALJ's RFC finding regarding plaintiff's use of her left upper extremity appears to be more restrictive than Dr. Blum suggested.  The ALJ found that plaintiff could "do no overhead reaching or work with her left upper extremity."  (Op., 8, PageID.134).  Further, the ALJ indicated that where he had departed from the physical RFC restrictions that Dr. Blum suggested, the "adjustments" were based on the "subsequently received medical evidence."  (Op., 19, PageID.145).  Among other things, the ALJ noted during the period between July 2014 and June 2015, plaintiff did not seek medical treatment for her musculoskeletal complaints.  (Op., 10, PageID.136).  Between June 2015 and December 2016, Mark Brown, M.D., plaintiff's primary care physician, consistently made "normal" musculoskeletal examination findings.  (*Id.* at 10-11, PageID.136-37) (*see* ECF No. 9-19, PageID.1017-18; ECF No. 9-21, PageID.1120-21, 1128-29, 1179-80, 1196-98; ECF

No. 9-22, PageID.1213-15).  I find no error.

Even assuming that plaintiff had shown error in the ALJ's RFC finding, he also had the burden of demonstrating that the error was harmful.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *see also Ulman v. Commissioner,* 693 F.3d at 713 ("Substantial evidence is the applicable standard of review, not perfection.").  Plaintiff has not presented any developed argument explaining how increased restrictions regarding stooping and kneeling and pushing and pulling with the left upper extremity would undermine the ALJ's finding that plaintiff was not disabled because she was capable of performing a substantial number of jobs in the national economy.  Plaintiff has not shouldered, much less carried her burden of demonstrating harmful error.

**5.**

Plaintiff argues that the ALJ "played doctor" and his RFC finding is not supported by substantial evidence because no medical source offered an opinion that plaintiff could stoop and kneel frequently, could work repetitively, and had unlimited pushing and pulling ability.  (Plf. Brief, 14-15, PageID.1295-96).

An argument that the ALJ's RFC lacks substantial evidence because no physician opined that plaintiff was capable of such work does not provide a basis for disturbing the Commissioner's decision.  *See Mokbel-Aljahmi v. Commissioner*, 732 F. App'x 395, 401-02 (6th Cir. 2018); *Shepard v. Commissioner*, 705 F. App'x 435, 442-43 (6th Cir. 2017).  RFC is an administrative finding of fact reserved to the

Commissioner.  20 C.F.R. § 416.927(d).  "The ALJ is charged with the responsibility of determining the RFC based on h[is] evaluation of the medical and non-medical evidence."  *Rudd v. Commissioner*, 531 F. App'x 719, 728 (6th Cir. 2013).  " '[T]o require the ALJ to base h[is] RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability.' "  *Shepard*, 705 F. Appx at 442-43 (quoting *Rudd*, 531 F. App'x at 728).  The ALJ did not improperly substitute his "own medical judgment" for that of any medical expert or interpret raw medical data beyond his ability by making his RFC determination.  *See Rudd*, 531 F. App'x at 726-27.

**6.**

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because he "cherry picked" the record.  (Plf. Brief, 15-19, PageID.1296-1300; Reply Brief, 4-5, PageID.1327-28).  The ALJ is not required to discuss every piece of evidence in the administrative record.  *See Kornecky v. Commissioner*, 167 F. App'x 496, 508 (6th Cir. 2006).  Arguments that the ALJ mischaracterized or "cherry picked" the administrative record are frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence."  *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009).  The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence.  *See Ulman v. Commissioner*, 693 F.3d at 713.  "The findings of the Commissioner are not subject to reversal merely because there exists in the record

substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772.  The ALJ's 25-page decision provides an accurate summary of the administrative record.

## 7.

Plaintiff argues that the Commissioner's decision should be overturned because the ALJ's opinion did not address regional jobs.  (Plf. Brief, 19-20, PageID.1300-01; Reply Brief, 5, PageID.1328).

At step five of the sequential process, the burden shifts to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which plaintiff could perform, her limitations notwithstanding.  *See* 20 C.F.R. § 416.966.  The Commissioner satisfies this requirement by demonstrating that there exists a significant number of jobs either:  (1) in the region where the claimant resides, or (2) in multiple other regions of the country.  *Id.*

At the administrative hearing, the vocational expert testified as to the number of jobs that existed in the national economy which plaintiff could perform despite her limitations.  (ECF No. 9-4, PageID.226-28).  The vocational expert did not testify as to the number of jobs which existed in the region where plaintiff resides.  The vocational expert likewise did not testify whether the jobs she identified in the national economy existed in more than one region of the United States.  Plaintiff argues that the ALJ's failure to establish whether the jobs in question existed in the region where she resides or in multiple other regions entitles her to relief.

The vocational expert testified to the existence of at least 348,000 jobs in the national economy that an individual with plaintiff's RFC could perform, such

limitations notwithstanding.   (ECF No. 9-4, PageID.226-28).   Given that the vocational expert identified such a large number of jobs, it was reasonable for the ALJ "to infer that such jobs exist in several regions." *Lee v. Commissioner*, No. 1:15-cv-1190, 2019 WL 1375335, at *10 (W.D. Mich. Mar. 27, 2019) (expressly rejecting the argument that claimant was entitled to relief because the ALJ failed to specify whether the 159,000 jobs identified by the vocational expert existed in the region of claimant's residence or multiple regions).   This argument is, therefore, rejected. Furthermore, plaintiff waived this issue by failing to raise it at the administrative hearing. *Id.*

I find no basis for disturbing the Commissioner's decision.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: September 17, 2019              /s/  Phillip J. Green
                                        PHILLIP J. GREEN
                                        United States Magistrate Judge

## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Berksire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).